UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

ARNOLD MOORE,

    Plaintiff,

v.

A-TEAM TRAPPERS, L.L.C., a Florida limited
liability company, LAINEY CENTRAL, L.L.C.,
a Florida limited liability company, CHRISTOPHER
COLE, an individual and CASSIE SASS, and
individual,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Arnold Moore ("Moore"), through his undersigned attorneys, files this Complaint against the Defendants, A-Team Trappers, L.L.C., Lainey Central, L.L.C., Christopher Cole, and Cassie Sass (hereinafter, "Defendant"), and alleges:

## JURISDICTION AND VENUE

1. This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

2. Jurisdiction is conferred upon this Court by:

    (a)    28 U.S.C. § 1331;

    (b)    28 U.S.C. § 1343; and

    (c)    29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

3. Venue is proper for the Southern District of Florida because:

  (a) Moore was employed in the Southern District of Florida by the Defendants which at all material times conducted, and continues to conduct, business in Broward County and worked his overtime in the Southern District at the Defendants' instruction; and

  (b) Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida (they ordered him to work overtime here) and because the corporate Defendant transacts its customary business in this district.

### CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4. Plaintiff has complied with all conditions precedent in this case, or they have been waived.

### PARTIES

5. Moore resides within this judicial district.

6. Defendant A-Team Trappers, L.L.C. is a Florida limited liability company which, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States, and the 2 individuals with day-to-day operational control over A-Team Trappers are the individual Defendants.  Moore wore an A-Team Trappers shirt and drove a truck with the logo and that entity advertises its business and held Moore out as having been its employee.

7. Defendant Lainey Central, L.L.C. is a Florida limited liability company which, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States, and the 2 individuals with day-to-day operational control over it are the individual Defendants.  Lainey Central, L.L.C. is the entity from which Moore received his paychecks when he was an employee for both joint employers, both of which Moore worked for and his labor benefited.

8. The corporate Defendants paid employees and paid Moore and have gross annual sales volume that greatly exceeds $500,000 annually for years 2018-21.

8.1. The corporate Defendant has two or more employees engaged in commerce, as they have two or more employees who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida.

8.2. For example, in the South Florida location Defendant has at least 15 employees two or more who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce), and use cars and vehicles and boats and work on boats that in turn use gasoline, which vehicles, boats, and gasoline were manufactured outside the State of Florida.

8.3. Further, the Defendant has various employees make long distance phone calls (suppliers, internet purchases, advertisers, and others) and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the businesses to operate.

9. Additionally, Moore is entitled to individual coverage, as he regularly and recurrently made calls to vendors, suppliers, prospective customers, and customers across state lines and thus he participated in the actual movements of goods or services and commerce across state lines.

10. Individual Defendants Cole and Sass are the co-owners and general managers of the corporate Defendants and operates them day-to-day and have operational control over the corporate Defendants deciding all financial decisions and having say over numerous employees and directing their work day-to-day, including how much they would be paid and when they would be paid, as the individual Defendants had the power the hire and fire, daily managed the company and was ultimately responsible for the profitability of the business.

11. Concerning Moore, Defendants Cole and Sass hired him, told him what to do day-to-day, determined how much and whether he would be paid (pay was often late because the business has cash-flow issues, at least those were the excused given by Defendants Cole and Sass to Moore), and Moore had to follow the individual Defendants' orders.

12. The corporate Defendants are an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too are the individual Defendants. The corporate Defendants are an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act. The corporate Defendants are an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act. During all times relevant to this action, the corporate Defendants were an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

13. Moore was an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

14. Moore was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint.

14.5. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Moore performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

## STATEMENT OF FACTS

15. Within the past three (3) years approximately (August 2020 to April 2022), Moore worked for the Defendant performing various duties, Cole fired Moore personally in the Southern District in April 2022. Moore worked under the title "animal trapper", which duties at first included

4

performing manual labor dealing with animals, insets, reptiles, and other creatures property owners wanted removed from their property.

16. Moore's duties included doing whatever task the Defendants instructed him to perform, which varied depending the time, but he was required to perform assignments given to him by the Defendants and they involved removing all sorts of different kinds of insects, reptiles, mammals), and had to obtain Defendants' approval as to how they wanted to handle certain situations.

17. Moore did not have the ability to hire or fire anyone (nor did he hire or fire anyone), and he did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

18. Moore was only given tasks that were designed to facilitate production work of the Defendant, such as the tasks described above, all of which consisted of regular, recurrent, and routine work that did not involve him exercising independent judgment and discretion on matters of significance.

19. Moore's primary duties were not management.

20. During Moore's employment, Moore did not have any authority to interview, select, and/or train employees.

20.1. Moore did not have any authority to set and adjust the rates of pay and hours of work for any employees.

20.2. Moore had no authority to direct the work of employees.

20.3. Moore did not maintain production or sales records at all when he worked for the Defendant, nor did he use any such records to supervise or control any employee.

20.4. In fact, Moore knows little about the business's financing or financial success or failure.

20.5. The finances were not his responsibility.

20.6. Moore did not supervise any staff. Moore had absolutely no say concerning any of the costs. For example, concerning wages paid to employees, Moore had no say concerning what any particular employee would be paid, how many employees could work in the buildings, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendants.

20.7. Moore had no authority to spend any of the Defendant's money at all, and had no authority to authorize the payment of bills.

20.8. Moore never opened up any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

21. While Moore worked for the Defendants, he never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status.

21.1. While Moore worked for the Defendants his last two years, he never handled employee complaints and grievances, as that was for the Defendants to do.

21.2. Also, Moore never disciplined employees, nor did he have the power or authority to do that.

21.3. Moore did not plan any work for any employee, as there was no work to plan.

21.4. Moore never determined any techniques to be used by employees to do their job. Moore never apportioned work among any employees, as there were no employees who reported to him to whom to apportion work.

21.5. Moore never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that.

21.6. Moore had no involvement in controlling the flow and distribution of materials or merchandise and supplies.

21.7. Moore had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Moore had no involvement with respect to budgeting.

21.8. Moore was not involved in reviewing any sort of financial documents or statements of the buildings, and he did not review any such documents, nor was Moore supposed to.

21.9. Moore had no involvement in monitoring or implementing legal compliance measures. There were no legal issues that Moore had anything to do with in terms of deciding how they would be handled or dealt with while he worked for Defendant, nor did he have anything to do with paperwork concerning new employees or hires. Moore simply followed the established techniques and procedures with respect to his duties, all of which were repetitive, routine, and recurrent work.

22. Moore did not do anything that could have resulted in financial losses for the Defendants.

22.1. Moore did not perform work that was directly related to management or general business operations of Defendants or their customers, because Moore did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (removing critters, and work arising out of that).

22.2. Moore also did not perform work directly related to the management or general business operations of the Defendants because Moore did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

22.3. Rather, Moore was one more person looking to perform production work the Defendants rely on so heavily, assist with the production work of removing critters.

23. In the course of employment with Defendant, Moore worked the number of hours required of him, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24. Moore regularly worked in excess of forty (40) hours per workweek—60-70 hours per week on average.

25. The Defendant should have partial accurate records of hours worked, because it required Moore to login on a computer (though he was given tasks and worked off of the clock when instructed to).

25.1. In or about August 2020, Moore was hired by Defendants in the position of wildlife trapper, although he was not licensed to perform such work and never even took a wildlife test.

25.2. Defendants trained Moore.

25.3. Moore worked full-time 60 hours/wk Monday-Saturday (roughly 8:00 a.m. to 6:00 p.m.).

25.4. In order to evade payroll taxes which is a felony (8 U.S.C. § 7202), the Defendants misclassified Mr. Moore as an independent contractor.

25.5. Moore worked for the Defendants until April 2022 as a full-time employee.

25.6. Defendant Cole came down to Broward and told Mr. Moore to come to a hotel to switch trucks and abruptly fired Mr. Moore.

25.7. Mr. Moore primarily worked in Broward County.

25.8. Mr. Moore was paid on the 16th and 1st of every month, and his average check was approximately $1,150 for 2 weeks of work.

25.9. He was paid $14.38/hr and thus his regular rate is $21.57/hr. Thus, the overtime he is owed can be calculated as: 60 hrs/wk x 21.57/hr x 85 wks = $110,007.00. This overtime is subject to doubling as liquidated damages under the FLSA because you misclassified him as an independent contractor and otherwise failed to pay him overtime when it was due. Moore asked for a paystub to show proof of income to move residences, but Defendants refused to provide him with one, and refused to provide any information concerning his compensation, although they possess it.

26. Moore has retained the undersigned legal counsel to prosecute this action in his behalf, and has agreed to pay them a reasonable fee for their services.

27. Moore is entitled to his reasonable attorneys' fees for prosecuting this action, whether or not he is the prevailing party.

## COUNT I – RECOVERY OF OVERTIME COMPENSATION

28. Moore re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 27 above as though fully set forth.

29. Moore is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

30. By reason of the intentional, willful, and unlawful acts of Defendant, Moore has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31. As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Moore is entitled to liquidated damages as provided in § 216 of the FLSA, and is entitled to recover damages for three (3) years.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, Moore demands judgment against Defendants for the wages and overtime payments due him for the hours

9

worked by him for which he has not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: ___March 8, 2023_____

<div style="margin-left: 50%;">

The Kleppin Firm, P.A.
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax  (954) 474-7405
E-mail: ckleppin@gkemploymentlaw.com


By:__s/Chris Kleppin_____
        Chris Kleppin
        Fla. Bar No. 625485

</div>