UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60441-RAR

**ARNOLD MOORE**,

    Plaintiff,

v.

**A-TEAM TRAPPERS, L.L.C.**,
*a Florida Limited Liability Company*, *et al.*,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS IN PART AND STAYING CASE

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss First Amended Complaint, [ECF No. 34], filed on June 15, 2023.[1] Having considered Defendants' Motion, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 34], is **GRANTED IN PART** for the reasons stated herein.

## BACKGROUND

This is a case arising under the Fair Labor Standards Act ("FLSA"). First Am. Compl. ("FAC"), [ECF No. 29] ¶ 1. Plaintiff alleges the two corporate Defendants, A-Team Trappers, L.L.C. ("A-Team Trappers") and Lainey Central, L.L.C. ("Lainey Central") were his joint employers. FAC ¶ 7. He alleges the two individual Defendants, Cole and Tiba, are the "co-owners and general managers of the corporate Defendants." FAC ¶ 10. From approximately August 2020 to April 2022, Plaintiff was employed with Defendants as an "animal trapper." FAC ¶ 15. The

---

[1] The Motion is fully briefed and ripe for review. Pl.'s Resp. to Defs.' Mot. to Dismiss ("Response"), [ECF No. 36]; Defs.' Reply to Resp. to Mot. to Dismiss ("Reply"), [ECF No. 37].

parties disagree on whether Plaintiff worked as an employee or independent contractor. *Compare* FAC ¶ 25.4, *with* Mot. ¶ 4. Nonetheless, Plaintiff's employment with Defendants was governed by an Independent Contractor Agreement ("Agreement"), [ECF No. 34-1]. This Agreement was "between A-Team Trappers, LLC . . . its affiliates, successors and assigns" and Plaintiff. Agreement at 1. The Agreement contained an arbitration provision, which provides in relevant part:

> This Agreement is governed by the Federal Arbitration Act and evidences a transaction involving commerce. Any dispute relating to this Agreement, or any other disputes or claims relating to the employment relationship (whether based in common law, contract or tort, or a federal, state or other statutory claim) will be governed and decided by binding arbitration pursuant to the Federal Arbitration Act and by an impartial independent arbitrator appointed by the American Arbitration Association. The place of arbitration shall be Pinellas County, Florida.

Agreement ¶ 19(A). Defendants move to dismiss this case on the ground that Plaintiff's claims must be arbitrated pursuant to this provision. *See generally* Mot.

## **LEGAL STANDARD**

A party may move to dismiss a case for lack of subject matter jurisdiction where the entire dispute is subject to an arbitration agreement. *See Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020). When adjudicating a motion to dismiss for lack of subject matter jurisdiction, a court may consider matters outside of the pleadings, such as an agreement between the parties attached to a motion to dismiss. *See id.*

While federal law establishes the enforceability of arbitration agreements, state law governs the interpretation of an arbitration provision. *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). The Federal Arbitration Act ("FAA") requires a court to stay or dismiss a lawsuit and compel arbitration where: "(a) the plaintiff entered

into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (internal quotation marks and citations omitted). When determining whether the parties agreed to arbitrate a claim, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000). "Federal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration." *Emp'rs Ins. of Wausau*, 251 F.3d at 1322.[2]

## ANALYSIS

### I. Plaintiff's FLSA Claims are Subject to Arbitration

First, the Court confirms Plaintiff's FLSA claims fall within the language of the Agreement. They clearly do. "Contract interpretation principles under Florida law require [courts] to look first at the words used on the face of the contract to determine whether that contract is ambiguous. It is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." *Rose v. M/V "Gulf Stream Falcon"*, 186 F.3d 1345, 1350 (11th Cir. 1999) (citations omitted).

The Agreement's arbitration provision is broad and unambiguous, requiring arbitration of "[a]ny dispute relating to this Agreement, or any other disputes or claims *relating to the employment relationship* (whether based in common law, contract or tort, or *a federal, state or other statutory claim*)." Agreement ¶ 19(A) (emphasis added). A claim arising under the FLSA

---

[2] Plaintiff's argument that the Supreme Court has recently eliminated the presumption in favor of arbitration in *Morgan v. Sundance*, 142 S. Ct. 1708 (2022) is unsupported by that citation, irrelevant to this matter, and contrary to law. *See* Resp. at 3.

clearly falls within this unambiguous language because it is a federal statutory claim relating to the parties' employment relationship.

While the language of the Agreement clearly includes Plaintiff's claims, he argues FLSA claims are not within the FAA's purview because they are not "a controversy . . . arising out of [a] contract or transaction." 9 U.S.C. § 2; *see* Resp. at 4–10. But courts frequently compel parties to arbitrate FLSA claims, so this argument summarily fails. *See, e.g.*, *Perera v. H & R Block E. Enters., Inc.*, 914 F. Supp. 2d 1284, 1288 (S.D. Fla. 2012); *Sammons v. Sonic-North Cadillac, Inc.*, No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032, at *4–5 (M.D. Fla. Aug. 7, 2007); *Bolamos v. Globe Airport Sec. Servs., Inc.*, No. 02-21005, 2002 WL 1839210, at *2 (S.D. Fla. May 21, 2002); *cf. Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334 (11th Cir. 2014) ("After examining the FLSA's text, legislative history, purposes, and . . . Supreme Court decisions, we discern no 'contrary congressional command' that precludes the enforcement of plaintiffs' Arbitration Agreements[.]") *Montero v. Carnival Corp.*, 523 F. App'x 623, 627–28 (11th Cir. 2013) (noting that claims under the Jones Act were arbitrable because they would not "be viable if [the plaintiff] had not served as an employee on one of Carnival's cruise ships").[3]

Accordingly, Plaintiff's FLSA claims are subject to arbitration. The Court now addresses Plaintiff's remaining arguments in turn.

---

[3] The Court is not persuaded by Plaintiff's citations to Florida law requiring courts to look to whether there is a nexus between the dispute and the contract, because those cases typically involve provisions that only reference claims "relating to" the agreement. *See Navarro v. Varela*, 345 So. 3d 365, 368 (Fla. 3d DCA 2022); *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 591 (Fla. 2013). The Agreement here is much broader. Indeed, this case *does* raise issues directly related to the Agreement. The parties dispute whether Plaintiff was an employee or independent contractor—a fact that is central to Plaintiff's FLSA claim. Because the parties all agree the employment relationship between them was governed by the Agreement, the Court disagrees that Plaintiff's claims are somehow unrelated to it. *See Gill v. J.G. Wentworth Home Lending, LLC*, No. 19-80591, 2019 WL 13234224, at *2 (S.D. Fla. July 8, 2019) ("[A]n FLSA violation regarding Plaintiff's compensation *relates* to the Employment Agreement, as the Employment Agreement sets forth how Plaintiff would be compensated.")

**II. Plaintiff's Other Arguments are Without Merit**

*a. Non-Signatories*

First, without citing to a single case, Plaintiff argues he cannot be compelled to arbitrate his claims against Defendants Lainey Central, LLC, Cole, and Tiba because the Agreement is only between him and A-Team Trappers. Resp. at 2. The Court disagrees.

"Although arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum . . . the lack of a written arbitration agreement is not [always] an impediment to arbitration." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citation omitted), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). "[T]here are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration." *Id.* (citation omitted). These exceptions recognize that "the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted" if the signatory was not compelled to also arbitrate the dispute brought against a non-signatory. *Id.* (alteration accepted) (quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976)). "Chapter 1 of the [FAA] permits courts to apply state-law doctrines related to the enforcement of arbitration agreements." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020).

Florida courts can apply equitable estoppel to allow a non-signatory to invoke an arbitration provision "when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract." *Shetty v. Palm Beach Radiation Oncology Assocs.-Sunderam K. Shetty, M.D., P.A.*, 915 So. 2d 1233, 1235 (Fla. 4th DCA 2005) (quoting *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla.

3d DCA 2003)). Courts must look to whether the plaintiff's claims against the signatory and non-signatory both arise out of the same factual allegations when determining if equitable estoppel applies in these circumstances. *See Shetty*, 915 So. 2d at 1235; *Armas*, 842 So. 2d at 212.

Applying these principles, Central Lainey—as well as Tiba and Cole—can clearly invoke the arbitration clause on equitable estoppel grounds. Plaintiff alleges A-Team Trappers and Central Lainey were his joint employers, and it appears the two entities paid him jointly and all Defendants are liable for the amount allegedly owed. FAC ¶¶ 7, 28–31. Therefore, Central Lainey may invoke the arbitration clause. In addition, all the relevant actions that form the basis of Plaintiff's claims were seemingly performed by Defendants Tiba and Cole, so the allegations against them are inherently the same factual allegations that underlie his claim against A-Team Trappers. *See* FAC ¶ 11 (stating that Cole and Tiba "hired [Plaintiff], told him what to do day-to-day, [and] determined how much and whether he would be paid"). To hold otherwise would allow Plaintiff to effectively render the arbitration proceedings between him and A-Team Trappers meaningless, because in the event he received an unfavorable decision he could merely relitigate the exact same issue against the remaining Defendants. *See MS Dealer Serv. Corp.*, 177 F.3d at 947.

Similarly, Florida law recognizes that non-signatories who are agents of a signatory may invoke an arbitration clause in certain circumstances. *See, e.g.*, *Amat v. Rey Pizza Corp.*, 204 F. Supp. 3d 1359, 1364–65 (S.D. Fla. 2016) ("The Eleventh Circuit recognizes that non-signatories can be bound to arbitrate under several theories arising from the common law principles of contract and agency law."); *see also Bolamos*, 2002 WL 1839210, at *2. A non-signatory agent may invoke an arbitration provision, for example, "when the signatory to the contract containing a[n] arbitration clause raises allegations of substantially interdependent and concerted misconduct by

both the nonsignatory and one or more of the signatories to the contract." *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. 1st DCA 2004) (quoting *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002)).

In addition to the aforementioned equitable estoppel principles, this agency theory clearly applies to Cole and Tiba. Plaintiff alleges Defendants Cole and Tiba are the "co-owners and general managers of the corporate Defendants and operate[] them day-to-day." FAC ¶ 10. Defendants Cole and Tiba were obviously acting as the agents of A-Team Trappers and Central Lainey when Plaintiff's claims arose, because his allegations against Cole and Tiba only relate to actions they took in their roles as the owners and operators of A-Team Trappers and Central Lainey. *See* FAC ¶¶ 10–11. Therefore, these allegations are substantially interdependent on the allegations against A-Team Trappers and Central Lainey. *See Koechli*, 870 So. 2d at 944. Indeed, as noted above, Plaintiff does not single out any Defendant he is pursuing relief from and instead proceeds against all Defendants jointly in his single count for overtime compensation. FAC ¶¶ 28–31. Defendants Cole and Tiba squarely fall within this agency theory and may compel arbitration.

Accordingly, the Court finds that all Defendants may properly invoke the arbitration clause within the Agreement.

### b. *Plaintiff Was Not Exempt from the FAA*

Next, Plaintiff argues he falls within the FAA exception for "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Plaintiff maintains he falls within this exception because he "handled materials, goods, and merchandise that was manufactured all throughout the world" and "handled telephone calls and researched things on the internet." Decl. Arnold Moore in Opp'n to Mot. to Dismiss, [ECF No. 36-1] ¶ 28.

But this exception is not nearly as broad as Plaintiff argues. This exception exempts "only contracts with transportation workers, rather than all employees, from the FAA." *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1790 (2022). To qualify as a transportation worker, a plaintiff "must be actively 'engaged in transportation' of . . . goods across borders via the channels of foreign or interstate commerce." *See id.* Nothing in the FAC or Plaintiff's declaration indicates he is a "transportation worker" as defined by the Supreme Court. Were his mere interaction with goods that traveled in interstate commerce enough to exempt Plaintiff from the FAA, this exception would encompass a great deal of workers clearly not contemplated by the language of the statute. In sum, this exception does not apply.

### c. The Arbitration Provision Did Not Expire

Finally, Plaintiff argues the arbitration provision did not survive the end of his employment. Resp. at 11. Notably, nothing in the Agreement or the arbitration provision specifically states this provision survives the termination of the Agreement or the end of the parties' relationship. *See generally* Agreement. The Court, however, finds the Agreement contemplates survival of the right to arbitrate disputes covered by the Agreement.

The Agreement broadly states the parties shall arbitrate "[a]ny dispute relating to th[e] Agreement[] or any other disputes or claims relating to the employment relationship," including claims based on common law as well as federal, state, or other statutes. Agreement ¶ 19(A). Courts have construed broad arbitration provisions as surviving the underlying agreement's termination. *See Bendlis v. NCL (Bahamas), Ltd.*, 112 F. Supp. 3d 1339, 1345 (S.D. Fla. 2015). "[B]road language" contained in an arbitration provision suggests the parties "intended for the arbitration clause to survive expiration." *See id.* The Eleventh Circuit has similarly concluded that broad arbitration clauses can survive the termination of the underlying

agreement—particularly where the language of the clause indicates that claims relating to the agreement's termination are subject to arbitration. *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245–46 (11th Cir. 2014); *Montero*, 523 F. App'x at 627 ("But that interpretation would allow an employee to avoid arbitration entirely by either disembarking from the ship ahead of schedule or waiting until his 10–month contract expires before he brings a claim.").

The Court finds the provision broad enough to survive the termination of the Agreement. Just like the provision in *Bendlis*, the Agreement's arbitration clause places little limitation on the claims that are subject to arbitration. *See Bendlis*, 112 F. Supp. 3d at 1345 (mandating arbitration of "any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the [plaintiff's] shipboard employment with [the defendant]"). The Court agrees the broad language of the Agreement, like the language in *Bendlis*, *Martinez*, and *Montero*, indicates this provision survived termination of the Agreement—particularly because the language is clearly broad enough to encompass claims relating to the Agreement's termination. The arbitration provision of the Agreement remains operative and may still be invoked.[4]

### III. The Court will Stay Proceedings

Defendants only request dismissal of this case but note in their Reply that the Court has the inherent authority to instead stay the case. *See generally* Mot.; *see also* Reply at 3. Section 3 of the FAA only refers to a "stay." 9 U.S.C. § 3. But a court may dismiss a case when all claims are subject to arbitration. *See Perera*, 914 F. Supp. 2d at 1290. Courts around the country are split as

---

[4] As a final matter, the Court notes that Plaintiff's declaration includes a host of representations that do not appear related to any argument contained in his Response. *See generally* Decl. Arnold Moore in Opp'n to Mot. to Dismiss. Because many of these facts do not relate to the arguments in the Response, the Court does not consider them. To the extent some of these assertions contradict the plain language of the Agreement, the Court finds them unavailing. And the Court notes this declaration appears to erroneously claim Plaintiff's duties included "hostessing at a restaurant." *Id.* ¶ 2. This apparent mistake calls into question the credibility of this declaration.

to whether a stay or dismissal is proper in these circumstances. *See Valiente v. Holiday CVS, LLC*, No. 20-20382, 2020 WL 2404701, at *2–3 (S.D. Fla. May 12, 2020) (collecting cases). The Eleventh Circuit, however, appears to prefer stays. *See id.* Accordingly, while Defendants did not request a stay, the Court will only grant the Motion in part and stay the case rather than dismiss it.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion, [ECF No. 34], is **GRANTED IN PART**.
2. Plaintiff is **COMPELLED** to arbitrate his claims against Defendants pursuant to the Agreement.
3. This case is **STAYED** pending the conclusion of the arbitration proceedings.
4. The parties shall provide the Court with joint status reports every **sixty (60) days** regarding the status of the arbitration proceedings.
5. The Clerk shall **CLOSE** this case for administrative purposes only.

**DONE AND ORDERED** in Miami, Florida, this 28th day of July, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**